UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | EP:22-CR-00773(1)-DB |
| | § | |
| ADRIAN GIL II | § | |

### DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA AND DISMISS INDICTMENT

Defendant Adrian Gil II moves to withdraw his plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) and asks this Court to dismiss the Indictment pursuant to Rule 12(b)(3)(B) due to recent and substantial changes in firearm regulation jurisprudence that render the statute he pleaded guilty to unconstitutional on its face and as applied to him.

The Indictment in this case charging Mr. Gil with Drug User in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(3), is an unconstitutional infringement of Mr. Gil's Second Amendment right to possess a firearm as elucidated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023). *Bruen* has abrogated prior Fifth Circuit precedent because it "fundamentally changed" Second Amendment jurisprudence. *Id.* at 170. Firearm regulations, including the criminalization of firearm possession by classes of individuals, pass constitutional muster only when the Government can identify a "distinctly similar historical regulation." *See id.* at 173 (*quoting Bruen*, 142 U.S. at 2131). Dismissal is warranted in this case because the Government cannot meet its burden under the *Bruen* framework because § 922(g)(3) does not have a "distinctly similar" historic analogue. In support, Mr. Gil shows the following:

### I.   BACKGROUND

On July 15, 2021, El Paso Police Department (EPPD) officers were dispatched to a residence in El Paso, Texas, regarding a disturbance where five individuals were chasing one individual and a gun was involved. When officers arrived, they observed individuals standing

outside of the home and as they approached, one individual ran inside the home. Officers ordered everyone to exit the residence. As officers entered the home, they observed a large vacuum sealed clear plastic bag that contained marijuana. After a continued safety sweep of the home, they observed another vacuum sealed clear plastic bag of marijuana. After obtaining a search warrant, they found multiple guns inside Gil's home. Mr. Gil was arrested for the drugs found inside of his home and in a subsequent statement given to detectives, Mr. Gil admitted to being a daily user of marijuana. Nearly a year later, on June 1, 2022, a federal grand jury returned an indictment charging Mr. Gil with Drug User in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(3). ECF No. 4. He pleaded guilty on November 10, 2022. Mr. Gil was set for sentencing on February 16, 2023. However, on that day, the Court continued the hearing in light of the Fifth Circuit's very recent decision in *Rahimi* on February 2, 2023 and asked both parties to address *Rahimi*'s impact on this prosecution.

## II. LEGAL STANDARD

Mr. Gil's requests to withdraw his guilty plea and dismiss the indictment against him are supported by the Federal Rules of Criminal Procedure and case law.

### A. Standard for Plea Withdrawal Under Rule 11(d)

Federal Rule of Criminal Procedure 11(d) allows a defendant to withdraw his or her guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." To determine whether a defendant may withdraw a guilty plea, courts consider the following factors: (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *United*

*States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020) (*citing United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)). While not all changes in the law merit the withdrawal of a guilty plea, it is appropriate where intervening law calls into question whether the defendant's conduct could lawfully support the charged offense. *See United States v. Presley*, 478 F.2d 163, 167-68 (5th Cir. 1973) (reversing denial of plea withdrawal under previous iteration at Rule 32(d)); *cf. United States v. Andrade*, 83 F.3d 729, 731-32 (5th Cir. 1996) (finding guilty plea did not waive defects in proceedings below "where intervening law has established that defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense[.]").

    **B. <u>Motion to Dismiss Standard</u>**

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores*, 404 F.3d at 325.

**III.    <u>ARGUMENT</u>**

In *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023), the Fifth Circuit held that 18 U.S.C. § 922(g)(8) facially violates the Second Amendment under the framework articulated by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct.

3

2111 (2022). *Rahimi* is the first opinion from the Fifth Circuit applying the *Bruen* framework and courts in this Circuit are bound by it absent an intervening change in law. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). This Court must, therefore, follow *Rahimi*'s lead on how to apply *Bruen* to this essentially identical § 922(g)(3) challenge.

### A. *Rahimi* found § 922(g)(8) facially violates the Second Amendment under the *Bruen* framework.

*Rahimi* addressed a Second Amendment challenge to § 922(g)(8), which prohibits firearm possession by a class of persons, specifically, individuals found to pose a credible threat to an intimate partner or child. 59 F.4th at 174. Before *Bruen*, the Fifth Circuit had repeatedly affirmed the constitutionality of the statute. *United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020); *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001). But the *Rahimi* court determined that *Bruen* "fundamentally changed" the analysis of Second Amendment challenges, rendering *Emerson* and *McGinnis* obsolete. 59 F.4th at 170. As the *Rahimi* court explained, the question is not whether disarming those under a domestic violence protective order is a "laudable policy goal," but whether the statute violates an individual's right to possess a firearm. *Id*. at 168. *Bruen* provides that when "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects the conduct . . . . In that context, the Government bears the burden of justifying its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 170 (*citing Bruen*, 142 S. Ct. at 2129–30) (cleaned up).

### i. The Second Amendment is not limited to "law-abiding" people and applies to conduct prohibited by § 922(g), specifically, individual possession of a firearm.

*Rahimi* held that possession of a pistol and a rifle "easily [fell] within the purview of the Second Amendment." *Id*. at 173. This met *Bruen*'s first step, thus "presumptively protect[ing] Rahimi's right to keep the weapons officers discovered in his home." *Id*. The court rejected the Government's argument that the Second Amendment applies only to "law-abiding,

4

responsible citizens[.]" *Id.* at 170-71. It explained that the argument fails because it is "(1) inconsistent with *Heller*, *Bruen*, and the text of the Second amendment, (2) it inexplicably treats Second Amendment rights differently than other individually held rights, and (3) it has no limiting principles." *Id.* at 171.

The court noted that "the people" in the Second Amendment unambiguously refers to "all members of the political community, not an unspecified subset." *Id.* (*citing District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). And it explained that *Heller* and *Bruen*'s uses of the term "law-abiding" in context "does not add an implied gloss that constricts the Second Amendment's reach." *Id.* Rather, it is a shorthand for *Heller*'s recognition that certain groups—felons and the mentally ill—have nevertheless historically been stripped of some Second Amendment rights. *Id.* Even felons and the mentally ill, though, are not automatically excluded from the Second Amendment or other constitutional protections but may potentially be subjected to constitutional deprivations by state action. *Id.* at 171-72.

> ii. **Despite historic "dangerousness" and surety laws, the Government was unable to identify any historic analogues similar enough to § 922(g)(8) to justify its constitutionality.**

*Rahimi* clarified the Government's burden at *Bruen*'s second step. It explained that the Government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *Id.* at 173 (quoting *Bruen*, 142 S. Ct. at 2131–32). The Government can do so through a "well-established and representative historical analogue," which is compared to the challenged law based on *how* and *why* they burden the right to armed self-defense. *Id.* (*citing Bruen*, 142 S. Ct. at 2133). "The core question is whether the challenged law and proffered analogue are 'relevantly similar.'" *Id.* The Court also noted that when a challenged regulation addresses a "general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing

5

that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. (*quoting Bruen*, 142 S. Ct. at 2131).

The Fifth Circuit held that the Government's historical examples were not "relevantly similar" enough to § 922(g)(8) to establish its consistency with historical traditions. *Id*. at 179. The Government relied on three categories of historical analogues: (1) English and American laws providing for disarmament of "dangerous" people, (2) English and American "going armed" laws, and (3) colonial and early state surety laws. *Id*. at 174-75.

First, the court rejected the laws disarming "dangerous" people as historical support for § 922(g)(8). *Id*. at 175-76. It explained that the Government's reliance on the English Militia Act of 1662 and related laws in the colonies was particularly misplaced, because its "provenance demonstrates that it is not a forerunner of our Nation's historical tradition of firearm regulation." *Id*. at 175. It explained that the English Bill of Rights, a precursor to the Second Amendment, explicitly restricted the Militia Act's reach in order to prevent the politically motivated disarmaments that had been pursued by English kings during the Stuart Restoration. *Id*. *Rahimi* also rejected reliance on laws disarming slaves, Native Americans, and those unwilling to take an oath. *Id*. It determined the laws were not relevantly similar to § 922(g)(8), because they disarmed classes or groups to preserve the general political and social order, not individuals identified to pose a specific threat to another person. *Id*. at 175-76. Finally, the court rejected the Government's reliance on proposals to limit the Second Amendment during ratification debates. *Id*. at 176. *Rahimi* explained these proposals did not become part of the Second Amendment and so could not counter the Second Amendment's plain text or serve as an analogue for § 922(g)(8). *Id*.

Second, *Rahimi* rejected "going armed" laws as historical analogues for § 922(g)(8). *Id*. The Government relied on colonial laws from Massachusetts, Virginia, New Hampshire, and North Carolina, which addressed "going armed offensively," and in some cases permitted

seizure of firearms. *Id.* at 176-77. The court noted it was "dubious these 'going armed' laws are reflective of our Nation's historical tradition of firearm regulation, at least as to forfeiture of firearms." *Id.* at 177. It explained that forfeiture was not included in one law and was dropped as a penalty in two others. *Id.* Even if the remaining law did include forfeiture of firearms by the founding, "one outlier is not enough to show a tradition …" *Id.* (*quoting Bruen*, 142 S. Ct. at 2142). Moreover, the laws were not relevantly similar to § 922(g)(8). *Id.* The laws only disarmed offenders after criminal proceedings and conviction and were addressed at "curbing terroristic or riotous behaviour" unlike § 922(g)(8). *Id.*

Third, the court determined "surety laws" were not sufficiently similar to § 922(g)(8). *Id.* at 178. These laws generally said that if a person feared another would injure him or destroy his property, that person could be asked to post surety in order to carry his weapon in public. *Id.* *Rahimi* recognized these laws as closer analogues, finding them to be part of our tradition of firearm regulation, and motivated by the same purpose as § 922(g)(8) – protecting an identified person from a specific harm. *Id.* But it reasoned *how* these laws worked was insufficiently similar. *Id.* Surety laws did not prohibit even public carry, let alone possession of firearms, so long as the offender posted surety. *Id.* They were only a partial deprivation of the right, unlike the complete prohibition embodied in § 922(g)(8). *Id.*

The *Rahimi* court reiterated that policy goals, no matter how laudable or wise, are the province of means-end scrutiny and are therefore foreclosed by *Bruen*. *Id.* at 179. Second Amendment challenges consider only text and history. *Id.* Under that framework, the Court held the Government failed to meet its burden and that § 922(g)(8) was facially unconstitutional. *Id.*

### B. *Rahimi* requires finding § 922(g)(3) unconstitutional in this case.

*Rahimi* has removed any confusion about the scope of *Bruen* and the continuing viability of pre-*Bruen* cases. Although *Rahimi* explicitly abrogated only *Emerson* and *McGinnis*, it is

7

clear that all pre-*Bruen* cases that adopted a means-end test or otherwise failed to conduct a textual, historic analysis of firearm regulations are no longer good law. *See, e.g., United States v. Everist*, 368 F.3d 517 (5th Cir. 2004). This is consistent with the plain language of *Bruen*, which abrogated several circuit opinions addressing § 922 cases. *See* 142 S. Ct. at 2127 n4. Under *Bruen* and now *Rahimi*, courts must apply the *Bruen* textual and historical framework to all Second Amendment challenges and cannot obviate that requirement by relying on pre-*Bruen* caselaw. *See also United States v. Hicks*, No. W:21-CR-60-ADA, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023) (finding unconstitutional § 922(n) prohibition of firearm possession by individual under indictment for felony offense); *United States v. Quiroz*, No. PE:22-CR-104-DC, 2022 WL 435482 (W.D. Tex. Sept. 19, 2022) (same). The Fifth Circuit's analysis in *Rahimi* naturally leads to the identical conclusion that § 922(g)(3) is unconstitutional, both facially and as applied to Mr. Gil.

First, *Rahimi* explicitly rejects any potential argument by the Government that the rights afforded by Second Amendment are limited to "law-abiding" citizens or otherwise not available to individuals who use controlled substances.[1] Such a position is incompatible with *Bruen* and the plain text of the Second Amendment, lacks a limiting principle, and would treat the Second Amendment differently than other constitutional rights. 59 F.4th 172. Furthermore, insofar as certain categories of people may have been historically disarmed, they are not excluded wholesale from "the people" protected by the Second Amendment. *Id*. at 171. Because individuals who are "unlawful user[s] or addicted to any controlled substance"

---

[1] Insofar as the Government may rely on dicta from *Heller* about presumptively lawful "longstanding prohibitions" on firearm possession by certain classes of individuals, including felons, the language does not eliminate the need to conduct a *Bruen* analysis. *See Heller*, 554 U.S. at 626. The language is unquestionably dicta. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). Moreover, the Supreme Court acknowledged that it had not undergone an exhaustive historical analysis of that issue. *Heller*, 554 U.S. at 626. If there is historical support for these "longstanding prohibitions," it is the Government's burden to provide it to the Court.

unquestionably remain part of "the people," any attempt to disenfranchise them of their Second Amendment rights is presumptively unconstitutional.

Thus, turning to *Bruen*'s second step, the Government must produce "distinctly similar" historical regulations involving drug users or addicts. The Government cannot meet its burden because there do not appear to be any founding-era laws "distinctly similar" to § 922(g)(3) – that is, no laws disarmed drug users or addicts as a class. The absence of such laws is evidence of the statute's unconstitutionality. *Id.* at 173 (*quoting Bruen*, 142 S. Ct. at 2131). Furthermore, the underlying historical evidence of disarming generally "dangerous" people does not support a finding that said laws also applied to drug users or addicts and was explicitly rejected in *Rahimi*. *Id.* at 175. Indeed, there is no reason to believe that laws disarming so-called "dangerous" people are similar enough to § 922(g)(3) when the Fifth Circuit has already found that there is insufficient similarity to § 922(g)(8). In short, *Rahimi* naturally compels the conclusion that § 922(g)(3) is also an unconstitutional infringement of a whole class of persons.

## IV. CONCLUSION

*Rahimi* has abrogated all prior Fifth Circuit cases upholding the constitutionality of various § 922 offenses and has re-emphasized that the *Bruen* framework applies to all Second Amendment challenges. Under *Bruen*'s first step, all Americans, including persons who use controlled substances, have an individual right to possess a firearm for self-defense. Under *Bruen*'s second step, it is now the Government's burden to show that § 922(g)(3) is consistent with the Nation's historical traditions of firearms regulation. If the Government is unable to produce evidence of sufficiently similar historic regulations, § 922(g)(3) must be found to be unconstitutional on its face or, at least, as-applied to Mr. Gil.

Wherefore, Mr. Gil requests that the Court allow him to WITHDRAW his plea of guilty and thereafter DISMISS the Indictment.

Respectfully submitted,

Denise E. Butterworth, P.C.
Attorney for Defendant

/s/ Denise Butterworth
501 North Kansas, Suite 200
El Paso, Texas 79901
(915) 532-8250
(915) 532-8253 (Fax)
State Bar Number: 24012368

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2023, I electronically filed the foregoing Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment with the Clerk of Court using the CM/ECF system.

/s/ Denise Butterworth
Denise Butterworth
*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| **V.** § | **EP:22-CR-00773(1)-DB** |
| § | |
| **ADRIAN GIL II** § | |

## ORDER

On this day, the Court considered Defendant's Motion to Withdraw his Guilty Plea and Dismiss Indictment, and the Court is of the opinion that the motion should be GRANTED. Accordingly, the Defendant is allowed to WITHDRAW his plea of guilty.

Furthermore, in light of *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023), the Court FINDS that 18 U.S.C. § 922(g)(3) is facially unconstitutional and as-applied to Mr. Gil. It is hereby ORDERED that the Indictment in this cause is DISMISSED.

SIGNED this ___ day of _____, 2023.

DAVID BRIONES
Senior United States District Judge