IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | EP-22-CR-773-DB |
| | § | |
| ADRIAN GIL, II | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA AND DISMISS INDICTMENT

On this day, the Court considered Defendant Adrian Gil II's ("Mr. Gil") "Motion to Withdraw his Guilty Plea and Dismiss Indictment" and the United States's ("the Government") timely response. ECF Nos. 39, 43.[1]

On November 10, 2022, Mr. Gil pleaded guilty to Title 18 U.S.C. § 922(g)(3), unlawful drug user in possession of a firearm. ECF No. 30. He now moves to withdraw that plea "due to recent and substantial changes in firearm regulation jurisprudence." Mot. 1, ECF No. 39. This "substantial change" stems from *United States v. Rahimi*, decided three months after Mr. Gil pleaded guilty. 61 F.4th 443 (5th Cir. 2023). *Rahimi* held that Title 18 U.S.C. § 922(g)(8), another status-based firearm restriction, was unconstitutional. *Id.* at 448.

Mr. Gil argues that, post-*Rahimi*, "the statute he pleaded guilty to [is] unconstitutional on its face." Mot. 1, ECF No. 39. The Court disagrees. Applying the legal standard articulated in *Bruen* and interpreted in *Rahimi*, the Court finds that although Mr. Gil's conduct was covered by the Second Amendment, the government offered a historical analogue, disarming "dangerous" groups, that supports the constitutionality of the statute. *New York State Rifle & Pistol Ass'n v. Bruen,* 142 S.Ct. 2111 (2022). Because Mr. Gil's challenge fails at *Bruen's*

---

1 "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

second step, the Court holds that the prohibition on firearm possession for unlawful drug users is constitutional.

## BACKGROUND

On July 15, 2021, the El Paso Police Department ("EPPD") was dispatched to a home in El Paso, Texas after being alerted to a fight involving a firearm there. Mot. 1, ECF No. 39; Resp 5, ECF No 43. When EPPD officers searched the house, they found marijuana in a vacuum-sealed clear plastic bag just inside the front door. Mot. 2, ECF No. 39; Resp. 5, ECF No. 43. After performing a "protective sweep" of the house, officers found another bag of marijuana. Mot. 2, ECF No. 39; Resp. 5, ECF No. 43. After obtaining a search warrant, officers found several more stashes of marijuana and "suspected steroids" in and around the house, as well as six firearms. PSR 4–5, ECF No. 36. EPPD arrested several individuals, including Adrian Gil II. *Id.* at 6. Mr. Gil admitted that all the firearms at the house belonged to him. *Id.* He also admitted to being a daily user of marijuana since the age of 14. *Id.*

On June 1, 2022, a federal grand jury returned an indictment charging Mr. Gil with violating Title 18 U.S.C. § 922(g)(3) ("§ 922(g)(3)"), which prohibits unlawful drug users from possessing firearms. ECF No. 4. On November 10, 2022, Mr. Gil pleaded guilty to the indictment. ECF No. 30.

Less than three months later, the Fifth Circuit struck down § 922(g)(8), the prohibition on firearm possession for persons subject to a restraining order. *Rahimi,* 61 F.4th 443. On February 26, 2023, Mr. Gil moved to withdraw his guilty plea and dismiss his indictment based on that decision. Mot., ECF No. 39.

## LEGAL STANDARD

### a. Standard for Second Amendment Challenges

2

Fifteen years ago, the Supreme Court held that the Second Amendment establishes an individual right to bear arms. *District of Columbia v. Heller,* 554 U.S. 570 (2008). Two years later, the Court held that this right applies to the states. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). After *Heller* and *McDonald*, courts of appeals adopted a two-step framework, combining "history with means end scrutiny," to analyze Second Amendment challenges. *Bruen*, 142 S.Ct. 2111, 2117-2118 (2022); *see Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194 (5th Cir. 2012).

But last year, the Supreme Court renounced this framework as "one step too many." *Bruen*, 142 S.Ct. at 2117. The Supreme Court upheld the first step as "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id.* at 2127. But it struck down the second step, the means-end test, as "inconsistent with *Heller*'s historical approach." *Id.* at 2129. In its place, *Bruen* established a new, two-step framework. *Id.* at 2127. In the first step, courts assess whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-2130. If so, then the government must show that the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

### b. Standard for Facial Challenges

This case presents a facial challenge to 18 U.S.C. § 922(g)(3), which prohibits unlawful drug users and addicts from possessing firearms.[2] "Facial challenges are disfavored for several reasons." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). First, facial challenges "often rest on speculation" and so "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Id.* (citing *Sabri v. United*

---

2 In his motion, Mr. Gil claims that 922(g)(3) is "unconstitutional on its face *and* as applied to him." Mot. 1, ECF No. 39. But Mr. Gil does not substantiate this "as-applied" challenge in his analysis, so the Court focuses exclusively on the facial challenge.

*States*, 541 U.S. 600, 609 (2004)). Second, facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (quotation marks omitted). Third, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. Because of this, facial challenges should be granted sparingly and only as a last resort." *United States v. McGinnis*, 956 F.3d 747, 752–753 (5th Cir. 2020).

### c. Prior Challenges to § 922(g)(3) That Did Not Rely on Means-End Scrutiny Remain Good Law.

The Fifth Circuit upheld the constitutionality of § 922(g)(3) in response to three previous challenges: *Patterson*, *Roach*, and *May*. 431 F.3d 832, 835-836 (5th Cir. 2005); 201 Fed. Appx. 969 (5th Cir. 2006); 538 Fed. Appx. 465, 466 (5th Cir. 2013). Another court in the Western District of Texas recently found that *Rahimi* abrogated all of these decisions. *United States v. Connelly*, 2023 WL 2806324, at *3 (W.D. Tex. 2023). But this Court respectfully disagrees as to the precedential value of *May* and *Patterson* because these cases did not rely on means-end scrutiny to reach their decision.

*Rahimi* held that by "expressly repudiate[ing] the circuit courts' means-end scrutiny," *Bruen* "fundamentally changed [the Fifth Circuit's] analysis of laws that implicate the Second Amendment, rendering [its] prior precedent obsolete." 61 F.4th at 450–451. (internal citations omitted). *Rahimi* specifically abrogated two cases, *Emerson* and *McGinnis*, that relied on means-end scrutiny to affirm § 922(g)(8). *Id.* at 450; 270 F.3d 203, 261–264 (5th Cir. 2001); 956 F.3d 747, 756–759 (5th Cir. 2020). But this Court distinguishes these cases from *Patterson* and *May* for one key reason: *Patterson* and *May* did not rely on the means end test that *Bruen*

4

eliminated. *See* 431 F.3d at 8326; *see* 538 Fed. Appx. at 466; *compare United States v. Roach*, 201 Fed. Appx. 969, 974 (5th Cir. 2006) (applying rational basis review).

   *Bruen* only eliminated the means-end scrutiny test but left the historical analysis intact. 142 S.Ct. at 2127 (holding that "step one of the predominant framework is broadly consistent with *Heller*"). For this reason, the Court relies on historical analysis from prior § 922(g)(3) challenges to reach its decision today. 142 S.Ct. at 2127. *See Grinage*, No. SA-21-CR-00399-JKP, 2022 WL 17420390, at \*2 (W.D. Tex. December 5, 2022) ("to the extent pre-*Bruen* cases relied on textual and historical analysis to find firearms restrictions constitutional, those cases are still good law."). The Court reaches this decision to avoid "formulating a rule of constitutional law broader than is required by the precise facts to which it is applied." *Washington State Grange*, 552 U.S. at 450.

<strong>ANALYSIS</strong>

   *Bruen's* first step requires that courts evaluate whether "the Second Amendment's plain text covers an individual's conduct." 142 S.Ct. at 2129–30. Circuit courts often break this step into two: (1) is the defendant subject to a limitation on Second Amendment rights; if not, (2) is their conduct covered by the Second Amendment. *See Rahimi*, 61 F.4th at 451–454; *see Range v. Att'y Gen. United States*, 53 F.4th 262, 282 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen. United States of Am.*, 56 F.4th 992 (3d Cir. 2023), and *on reh'g en banc sub nom. Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023).

   If the court answers in the affirmative, it proceeds to *Bruen*'s second step, evaluating whether the regulation is "consistent with the Nation's historical tradition of firearm regulation." 142 S.Ct. at 2130.

**I.**   **The Second Amendment's Plain Text Covers Mr. Gil's Conduct.**

5

**a. Post-*Rahimi*, Unlawful Drug Users Are Not Subject to Limitations on Their Second Amendment Rights.**

The first question is whether unlawful drug users are subject to the "limitations upon the individual right" to bear arms. *Heller*, 554 U.S. at 595.

Mr. Gil relies on *Heller* to argue that they are not. Mr. Gil highlights *Heller*'s statement that "the people," as described in the Second Amendment, refers to "all members of the political community, *not an unspecified subset*." Mot. 5, ECF No. 39 (citing 554 U.S. at 580) (emphasis added).[3] But the Court finds this passage unpersuasive because the "subset" at issue specifically refers to members of the militia. *Heller,* 554 U.S. at 580 ("the 'militia' in colonial America consisted of a subset of 'the people'—those who were male, able-bodied, and within a certain age range."). This passage is taken from the first section of Heller, where the Court resolves whether the Second Amendment is "an individual right unconnected with *militia service*." *Heller*, 554 U.S. at 582 (emphasis added). The Court dedicates 45 pages to this analysis, and it is only once it has resolved that the Second Amendment covers individuals unconnected with the militia that it "turn[s] to limitations upon [that] individual right." *Id.* at 595, 626–28.

The Government relies on *Heller* to reach the opposite conclusion, asserting that the plain text of the Second Amendment does not cover Mr. Gil because it only protects "the right of law-abiding, responsible citizens." Resp. 9, ECF No. 43 (citing *Heller*, 554 U.S. at 635). The Government argues that the Second Amendment does not cover Mr. Gil's conduct because "illegal drug users and addicts are, by definition, not law-aiding [sic] citizens." *Id.* at 7.

The Court disagrees with the Government for two reasons. First, the Court disagrees with the statement that everyone who falls under § 922(g)(3) is engaged in unlawful

---

3 The Fifth Circuit also relies on this passage out-of-context, finding that "*Heller*'s exposition of 'the people' strongly indicates that Rahimi is included in 'the people' and thus within the Second Amendment's scope. *Rahimi*, 61 F.4th at 451 (citing 544 U.S. at 580).

activity. Section 922(g)(3) covers two categories of individuals: unlawful drug users and addicts.

Where unlawful drug users are inherently involved in unlawful activity because they use drugs "in

a manner other than as prescribed by a licensed physician," addicts may have acquired drugs by

lawful means, under the supervision of a licensed physician. 27 C.F.R. § 478.11. Thus, the Court

rejects the Government's statement that "illegal drug users and addicts are, by definition, not law-

abiding citizens" as overly broad. Resp. 9, ECF No. 43.

Second, the Court finds that *Rahimi* dramatically expanded the definition of "law-

abiding, reasonable citizens" to the extent that unlawful drug users like Mr. Gil are not

presumptively excluded from Second Amendment rights. The Fifth Circuit interpreted "law-

abiding, responsible citizen" as "shorthand" that *Heller*'s holding "should not 'be taken to cast

doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."

*Rahimi*, 61 F.4th at 452 (citing *Heller*, 554 U.S. at 626–27).

The Fifth Circuit held that Rahimi was not subject to any limitation on his Second

Amendment rights even though "between December 2020 and January 2021, [he] was involved in

five shootings in and around Arlington, Texas." *Id.* at 448. The court reasoned that although he

was "*suspected* of other criminal conduct at the time, Rahimi was *not a convicted felon* or

otherwise subject to another 'longstanding prohibition on the possession of firearms' that would

have excluded him." *Id.* at 452 (citing *Heller*, 554 U.S. at 626–627) (emphasis added).

Following the Fifth Circuit's interpretation of "law-abiding, responsible citizens,"

the Court finds that if the Second Amendment covered Rahimi's conduct, then the same holds for

Mr. Gil. Although Mr. Gil admitted to unlawful drug use, at the time of his arrest he was not a

"*convicted* felon or otherwise subject to another longstanding prohibition" on firearm possession.

PSR 6, ECF No. 36; *Rahimi*, 62 F.4th at 452. Where Rahimi was "suspected" of criminal activity,

7

Mr. Gil "admitted" to his unlawful drug use, but neither had been convicted. *Id.* Thus, if Rahimi enjoys Second Amendment rights so too should Mr. Gil.

Resolving that Mr. Gil is not subject to any limitations on his Second Amendment rights, the Court proceeds to the next step: evaluating whether his conduct was covered by the plain text of the Second Amendment.

### b. The Second Amendment Covers Firearm Possession.

The Fifth Circuit held that Rahimi's conduct, "possession of a pistol and a rifle" is covered by the Second Amendment. *Rahimi*, 61 F.4th at 454. The court reasoned that the Second Amendment "grants him the right 'to keep' firearms, and 'possession' is included within the meaning of 'keep.'" *Id.* (citing *Bruen*, 142 S. Ct. at 2134–2135). Further, the court found that these weapons were "'in common use' such that they fall within the scope of the amendment." *Id.* (citing *Bruen*, 142 S. Ct. at 2133).

Like Rahimi, Mr. Gil's conduct was possession of "rifle[s] and [ ] pistol[s]." PSR 4–5, ECF No. 36. Adhering to *Rahimi*, the Court finds that Mr. Gil's conduct "easily falls within the purview of the Second Amendment." 61 F.4th at 454.

### c. Conclusion

Because the Court finds that (1) unlawful drug users are not subject to limitations on their Second Amendment rights and (2) the Second Amendment covers possession of rifles and pistols, the Court concludes that the Second Amendment's plain text covers Mr. Gil's conduct. Thus, the Court proceeds to *Bruen*'s second step.

## II. Section 922(g)(3) is Consistent with the Second Amendment's Text and Historical Understanding.

Next, the Court evaluates whether the challenged regulation is "consistent with the Second Amendment's text and historical understanding." 142 S.Ct. at 2130. *Bruen* charges courts

8

with applying two distinct analyses depending on whether the regulation addresses a problem that existed at the nation's founding or whether it addresses an "unprecedented societal concern." *Id.* at 2132. When the regulation addresses this kind of modern societal concern, the court's inquiry will "require a more nuanced approach . . . often involv[ing] reasoning by analogy." *Id.*

Although drug use and addiction in the country is not new, the public perception and policy response to drug use "dramatically changed" in the twentieth century. David T. Courtwright, *A Century of American Narcotic Policy* 1 (Institute of Medicine, 1992).[4] Because unlawful drug use and addiction represents an "unprecedented societal concern," the Court applies the "nuanced approach" to this historical analysis. *Bruen*, 142 S.Ct. at 2132.

Under this "nuanced approach," courts examine whether the modern regulation is "relevantly similar" to the historical analogue. *Id.* *Bruen* did not "provide an exhaustive survey of the features that render a regulation relevantly similar," but it did "point towards at least two metrics: *how* and *why* the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133.

### a. The Historical tradition of disarming the intoxicated *does not* support the Constitutionality of § 922(g)(3).

First, the Government compares § 922(g)(3) to historical laws disarming the intoxicated, citing several historical statutes "prohibiting intoxicated persons from possessing,

---

4 Although drug use and addiction has existed since the nation's founding, when the Second Amendment was enacted "there was virtually no effective regulation of narcotics in the United States." Courtwright, supra, at 1. During the nineteenth century, "addicts were more often found among upper- and middle-class women, many of whom had begun using morphine to relieve the symptoms of various illnesses." *Id.* at 2. In the founding era, "the public thought of addiction as neither a crime nor a fit object for mandatory treatment." *Id.* at 3. However, public perception of drug users and addicts changed in the twentieth century, with the emergence of two new drugs, cocaine and heroin, that the public associated with black and immigrant communities. *Id.* at 3. "Disdain for users, tinged by ethnic and class prejudice was an impetus for restrictive legislation." *Id.* at 4. And in the first half of the twentieth century, the government ramped up policies restricting and criminalizing the use and distribution of controlled substances. *Id.* at 19. Section 922(g)(3), passed in 1968 under the Gun Control Act, is one such example from the wave of restrictions on unlawful drug users and addicts that surged in the twentieth century. Pub. L. 90–618, § 102, 82 Stat. 1213, 1220.

using, or receiving firearms." Resp. 18, ECF No. 43.  The Government asserts that the historical laws are relevantly similar because of "how" these laws burden Second Amendment rights. *Id.* at 19 ("The manner in which the modern restriction burdens Second Amendment rights is comparable to how the intoxication statutes burdened those rights." *Fried*, 2022 WL 16731233, at *7).  In particular, the Government emphasizes that both the historical laws and § 922(g)(3) only "*temporarily* restricted a person's gun rights." *Id.* (emphasis added).

But the Court disagrees; the manner in "how" these intoxication laws burdened individuals is not relevantly similar. *Bruen*, 142 S.Ct. at 2133.  The Court agrees with the Government that both laws only exact a temporary restriction, however, the Court finds that the temporal restriction under § 922(g)(3) has the potential to far exceed the restriction under the historical intoxication laws.

Where historical intoxication laws restricted Second Amendment rights "while impaired," § 922(g)(3) restricts gun rights while a person is "an active drug user." Resp. 19, ECF No. 43. (citing *Fried*, 2022 WL 16731233, at *7).  Although this language may, at first glance, appear synonymous, under § 922(g)(3) "a person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm." 27 C.F.R. § 478.11.  Moreover, courts may infer active use from a positive drug test, conviction, or arrest for a controlled substance up to one year prior. *Id.*

Although § 922(g)(3) and the historical intoxication both enact a "temporary" restriction on Second Amendment rights, the Court finds that the length of the restriction may be much longer (as long as a year) under the modern statute.  For that reason, the Court finds that "how" the historical intoxication laws restrict Second Amendment rights is not "relevantly similar"

to how § 922(g)(3) restricts Second Amendment rights.  Thus, this historical analogue does not support the constitutionality of § 922(g)(3).

**b. The Historical tradition of disarming presumptively dangerous groups of people *supports* the Constitutionality of § 922(g)(3).**

Next, the Government compares §922(g)(3) to historical laws disarming presumptively dangerous groups of people.  Resp. 20–26, ECF No. 43.  The Court agrees that these historical laws support the constitutionality of § 922(g)(3) because the reason "why" these laws were enacted is relevantly similar.  *Bruen*, 142 S.Ct. at 2133.

Historically, legislatures had "broad discretion" to restrict firearm use and implemented categorical disqualifications "to address the threat purportedly posed by *entire categories of people* to an orderly society and compliance with its legal norms." *Range*, 53 F.4th at 282 (emphasis added).[5]  In 1968, Congress exercised this power and discretion, when it enacted § 922(g)(3), adding "unlawful drug users and addicts" to the list of groups excluded from firearm possession.  Pub. L. 90–618, § 102, 82 Stat. 1213, 1220.  With the passage of this statute, Congress signaled that unlawful drug users and addicts "pose a risk to society if permitted to bear arms." *See Patterson*, 431 F.3d at 835-836; *United States v. Seay,* 620 F.3d 919, 926 (8th Cir. 2010) ("Congress expressed its intention to 'keep firearms out of the possession of drug abusers, a dangerous class of individuals"); *see also United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) ("Congress was not alone in concluding that habitual drug abusers are unfit to possess firearms" because "many states have restricted the right of habitual drug abusers or alcoholics to

---

5 The earliest firearm restrictions in colonial America "prohibited Native Americans, Black people, and indentured servants from owning firearms." *Range*, 53 F.4th at 276.  Likewise, some colonies disarmed Catholics and individuals "who refused to swear their allegiance and fidelity to the state." *Id.* at 279.  The Court "reject[s] the notion that distinctions based on race, class, and religion correlate with disrespect for the law or dangerousness." *Id.* at 276 n.18.  While these laws are "repugnant," they are useful for this analysis to show that "legislatures had the power and discretion to use status as a basis for disarmament." *Id.*

possess or carry firearms.")

Since *Bruen*, several courts have found that historical laws disarming "dangerous" groups are relevantly similar to § 922(g)(3). *United States v. Sanchez*, 2022 WL 17815116, at *3 (W.D. Tex. Dec. 19, 2022); *United States v. Seiwert*, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) ("§ 922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms"); *Fried v. Garland*, 2022 WL 16731233, at *7 (N.D. Fla. Nov. 4, 2022) ("the historical tradition of keeping guns from those the government fairly views as dangerous…is sufficiently analogous to modern laws keeping guns from habitual users of controlled substances."); *United States v. Posey*, 2023 WL 1869095, at *9 (N.D. Ind. Feb. 9, 2023) (finding § 922(g)(3) "analogous to historical regulations preventing dangerous persons, such as felons and the mentally ill, from possessing firearms"); *United States v. Daniels*, 610 F. Supp. 3d 892, 895–97 (S.D. Miss. 2022).

Mr. Gil argues that the comparison between historical laws disarming dangerous groups and § 922(g)(3) was "explicitly rejected in *Rahimi*." Mot. 9, ECF No. 39. But the Court finds that the opposite is true: *Rahimi* actually bolsters the Government's argument. *Rahimi* held that § 922(g)(8) was inconsistent with historical laws disarming "classes of people considered to be dangerous" because the reason "*why* [these historical laws] disarmed people was different." *Rahimi*, 61 F.4th at 457 (emphasis added). The purpose of these historical laws was, purportedly, "the preservation of political and social order." *Id.* The court distinguished this from the restriction on persons subject to a restraining order because that statute does not purport to protect society at-large but instead "an *identified person.*" *Id.* (emphasis added).

Yet the disarmament of unlawful drug users and addicts under § 922(g)(3) more closely resembles these historical laws to serve "the preservation of political and social order"

12

rather than protecting an "identified person." *Id.* Thus, the Court agrees with the Government that not only does *Rahimi* not preclude this historical analogue, but actually "*support[s]* the constitutionality of the statute at issue in this case." Resp. 26, ECF No. 43 (citing *Posey*, 2023 WL 1869095, at *9 n.7) (emphasis added).

Because the Court finds that historical laws disarming dangerous groups are "relevantly similar" to § 922(g)(3), it concludes that disarming unlawful drug users and addicts is "consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S.Ct. at 2130.

## CONCLUSION

Although the Second Amendment protects Mr. Gil's conduct, the historical tradition of disarming "dangerous groups" is relevantly similar to § 922(g)(3). Thus, the Court rejects Mr. Gil's facial challenge and affirms the constitutionality of disarming unlawful drug users and addicts.

Thus, after due consideration, the Court is of the opinion that the following orders should enter:

**IT IS HEREBY ORDERED** that Defendant Adrian Gil, II's "[ ] Motion to Withdraw His Guilty Plea and Dismiss Indictment," ECF No. 39, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Adrian Gil, II's cause is rescheduled for sentencing on **July 19, 2023 at 9:30 a.m.**

SIGNED this _5th_ day of **July 2023**.

THE HONORABLE DAVID BRIONES
**SENIOR UNITED STATES DISTRICT JUDGE**