

# United States Court of Appeals
## for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Jun 06, 2024

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 23-50525

United States Court of Appeals
Fifth Circuit
**FILED**
May 15, 2024
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

versus

ADRIAN GIL, II,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:22-CR-773-1

_____

Before ELROD, GRAVES, *Circuit Judges*, and ASHE, *District Judge*.*

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

_____

 \* United States District Judge for the Eastern District of Louisiana, sitting by designation.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. *See* FED. R. APP. P. 41(b). The court may shorten or extend the time by order. *See* 5TH CIR. R. 41 I.O.P.

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 15, 2024
Lyle W. Cayce
Clerk

No. 23-50525

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

versus

ADRIAN GIL, II,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:22-CR-773-1

_____

Before ELROD, GRAVES, *Circuit Judges,* and ASHE, *District Judge.**

PER CURIAM:[†]

    Adrian Gil II pleaded guilty to one count of being an unlawful drug user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). On appeal, he argues that the statute of conviction is unconstitutional as applied to him. We VACATE and REMAND for consideration of Gil's as-applied

---

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

[†] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

Case 3:22-cr-05773-DB Document 64-2 Filed 06/06/24 Page 2 of 10
Case: 23-50525 Document: 70 Page: 4 Date Filed: 06/06/2024

No. 23-50525

challenge in light of *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), *petition for cert. filed,* No. 23-376 (U.S. Oct. 10, 2023).

I.     FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2021, the El Paso Police Department ("EPPD") was dispatched to a home in response to a fight involving a firearm. EPPD officers found marihuana in a vacuum-sealed clear plastic bag just inside the front door. Officers then performed a "protective sweep" and found another bag of marihuana. After obtaining a search warrant, the officers' subsequent search uncovered several more stashes of marihuana, THC products, drug paraphernalia, and "suspected steroids" in the house, as well as six firearms. EPPD arrested several individuals, including Gil.

In a recorded custodial interview, Gil was Mirandized but agreed to talk with an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Gil admitted that all the firearms found in the house were his and explained how he had obtained some of them. Gil told the agent that he began using marihuana at age fourteen and transitioned to daily use after high school. Gil said that marihuana helped him eat more and he "like[d] good weed." When the agent asked if Gil knew it was a federal offense to be a drug user in possession of a firearm, Gil responded, "Trap. Trap. You got me." Gil also stated that he knew it was illegal to have marihuana, a medical card from New Mexico, and firearms. Gil admitted that he was concerned about people breaking into his house because he had drugs on the premises.

On June 1, 2022, a federal grand jury returned an indictment charging Gil with violating 18 U.S.C. § 922(g)(3), which prohibits unlawful users of, or those addicted to, a controlled substance from possessing firearms. Gil pleaded guilty as charged, without a plea agreement, on November 10, 2022.

Prior to Gil's sentencing hearing, this court handed down its decision in *Rahimi*, holding 18 U.S.C. § 922(g)(8), which prohibits persons subject to

No. 23-50525

a restraining order from possessing firearms, unconstitutional on its face. *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023). Gil then moved to withdraw his guilty plea and dismiss the indictment, relying on *Rahimi* and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2023), to pose facial and as-applied challenges to § 922(g)(3).[1]

On July 5, 2023, the district court, analyzing only the facial challenge, denied Gil's motion. *United States v. Gil*, EP-22-CR-773-DB, 2023 WL 4356067 (W.D. Tex. July 5, 2023). Following the *Rahimi* court's interpretation of the phrase "law-abiding, responsible citizens,"[2] the district court held that Gil—an admitted unlawful drug user—was not subject to any limitations on his Second Amendment rights at the time of arrest because "he was not a '*convicted* felon or otherwise subject to another longstanding prohibition' on firearm possession." *Id.* at *4 (emphasis in original) (quoting *Rahimi*, 61 F.4th at 452). Next, the district court found that Gil's conduct—possession of rifles and pistols—is covered by the Second Amendment's plain text. *Id.* at *5. The district court then determined that unlawful drug use and addiction was not "a problem that existed at the nation's founding" but instead is an "unprecedented societal concern" that, under *Bruen*, requires a "nuanced approach," often involving reasoning by analogy, to evaluate whether the challenged regulation is consistent with the text and historical understanding of the Second Amendment. *Id.* Applying the "nuanced approach," the district court found that the historical tradition of

---

[1] In the memorandum filed in support of his motion to withdraw guilty plea and dismiss indictment, Gil states that he raises both types of challenges, but it appears that he only analyzes the facial challenge.

[2] The phrase comes from the Supreme Court's opinion in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), and, says the government, delimits those persons covered by the Second Amendment.

disarming intoxicated persons—the first analogue examined—does not support the constitutionality of § 922(g)(3), because an unlawful drug user or addict may not be impaired at the time he possesses a firearm. *Id.* at *6. This means that "the temporal restriction under § 922(g)(3) has the potential to far exceed the [comparable temporal] restriction under the historical intoxication laws." *Id.* However, the district court, citing several district court opinions, including *United States v. Daniels*, 610 F. Supp. 3d 892, 895–97 (S.D. Miss. 2022), held that the historical tradition of disarming presumptively dangerous groups—the second analogue examined—supports the constitutionality of § 922(g)(3), because unlawful drug users and addicts, especially those with guns, pose a risk to society.[3] *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at *6–7. Thus, the court rejected Gil's facial challenge to the constitutionality of § 922(g)(3). *Id.* at *7.

On July 19, 2023, the district court sentenced Gil to a 35-month term of imprisonment, followed by a three-year term of supervised release. Gil appealed from the judgment.

On August 9, 2023, this court issued its decision in *Daniels*, holding that § 922(g)(3) was unconstitutional *as applied* where there was no evidence that the defendant—an admitted regular marihuana user—was intoxicated at the time of his arrest, and no evidence of when he last used marihuana. *Daniels*, 77 F.4th at 339–40. Gil moved for a new trial, arguing that *Daniels* demonstrated that § 922(g)(3) was unconstitutional as applied to him. The district court denied the motion as untimely.

---

[3] The court distinguished *Rahimi* by stating that the purpose of the historical laws disarming dangerous groups was "the preservation of political and social order," whereas the purpose of a restriction on firearm possession by persons subject to a restraining order is the protection of "an identified" person, not society at large. *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at *7.

4

## II. DISCUSSION

On appeal, Gil challenges the district court's denial of his motion to withdraw his guilty plea and dismiss the indictment, arguing that § 922(g)(3) violates the Second Amendment as applied to him given *Bruen*, *Rahimi*, and *Daniels*.[4]

Gil preserved his right to challenge the constitutionality of the statute of conviction on direct appeal by raising the challenge in the district court in his motion to dismiss the indictment. *See Class v. United States*, 583 U.S. 174, 178–79 (2018); *Daniels*, 77 F.4th at 341. This court reviews constitutional questions—including the constitutionality of a statute—de novo. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003). Review of the denial of a motion to dismiss the indictment is likewise de novo. *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017). On the other hand, this court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009). And a district court's factual findings are reviewed for clear error. *United States v. Scully*, 951 F.3d 656, 668 (5th Cir. 2020).

Subject to some limitations, "[t]he Second Amendment protects the right of individuals to keep and bear firearms for their self-defense." *Daniels*, 77 F.4th at 341 (internal quotation marks and citations omitted). With *Bruen*, the Supreme Court articulated a new test for assessing the constitutionality of a gun-restriction statute under the Second Amendment. *Id.* (citing *Bruen*, 597 U.S. at 22–27). Because "the Second Amendment codified a *pre-existing* right with pre-existing limits," courts must look to "historical gun regulations [that] evince the kind of limits that were well-understood at the

---

[4] Because Gil raises only an as-applied challenge on appeal, this court need not consider the government's argument that § 922(g)(3) is constitutional on its face.

time the Second Amendment was ratified." *Id.* (emphasis in original) (citing *Bruen*, 597 U.S. at 20). A modern-day gun regulation that is inconsistent with the historical limits on firearms is inconsistent with the Second Amendment. *Id.*

To that end, the *Bruen* court prescribed a two-step approach for analyzing the constitutionality of modern firearms laws. *Id.* First, a court must determine whether the Second Amendment's plain text covers the individual's conduct, and if it does, the Constitution presumptively protects that conduct. *Id.* (citing *Bruen*, 597 U.S. at 24). Second, a court must consider "whether a given gun restriction is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24). The government bears the burden of showing a tradition supporting the challenged law, *i.e.*, "that the law does not tread on the historical scope of the right." *Id.* At this second step, courts are to take one of two pathways: (1) "If the modern regulation addresses 'a general societal problem that has persisted since the 18th century,' then 'the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment'"; or (2) "if a modern law addresses 'unprecedented societal concerns or dramatic technological changes,' it calls for a 'more nuanced approach,'" where courts "reason by analogy to determine whether older regulations are 'relevantly similar' to the modern law." *Id.* at 342 (quoting *Bruen*, 597 U.S. at 26–29).

Employing *Bruen*'s analytical framework, the court in *Daniels* held that § 922(g)(3) was unconstitutional as applied to the defendant. *Id.* at 339–55. First, the court found that the defendant—an admitted regular marihuana user—was covered by the plain text of the Second Amendment

and had a presumptive right to bear arms.[5] *Daniels*, 77 F.4th at 342. At *Bruen*'s second step, the *Daniels* court found that unlawful drug use and addiction represent an unprecedented societal concern that did not exist in the 18th century, thus requiring the nuanced approach, analyzing by analogy whether older regulations are relevantly similar to § 922(g)(3).[6] *Daniels*, 77 F.4th at 343–44. The court examined three potential historical analogues: (1) statutes disarming persons intoxicated by alcohol, (2) statutes disarming the mentally ill, and (3) statutes disarming those adjudged dangerous or disloyal. *Id*. at 344–55.

After reviewing several 18th and 19th century statutes that disarmed intoxicated persons, the *Daniels* court held that those laws do not support the constitutionality of § 922(g)(3) because they did not bar gun possession by regular drinkers. *Id.* at 345–47. The analogous "statutes support . . . banning the *carry* of firearms *while under the influence*," but "[s]ection 922(g)(3) bans all possession [by unlawful drug users or those addicted to a controlled substance], and it does so for an undefined set of 'users,' even if they are not under the influence." *Id*. at 347 (emphasis in original). The court pointed out that "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user' under § 922(g)(3)," because the "temporal nexus" of the latter is vague in that "it does not specify how recently an individual must 'use' drugs to qualify for the prohibition." *Id*. at 347–48. Notably, the government did not present any evidence that the defendant was intoxicated at the time he was found with the gun. *Id*. at 348.

---

[5] The district court in this case held the same. *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at *5.

[6] Again, the district court in this case held the same. *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at *5.

The district court in this case determined that the historical analogues disarming the intoxicated do not support the facial constitutionality of § 922(g)(3). *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at *6. It did so, though, without the benefit of our decision in *Daniels*. The government asks this court to infer that Gil was intoxicated when he possessed the guns and at the time of arrest because he admitted to using marihuana daily and he failed a sobriety test when stopped for speeding on two occasions. We decline the invitation to make such an inference at this stage, and also leave to the district court the question of whether, if that inference is appropriate, it would satisfy a finding of constitutionality under *Daniels*.

The court in *Daniels* next examined the historical practice of institutionalizing—and consequently disarming—the mentally ill as historically analogous to disarming illegal drug users or those addicted to a controlled substance. *Id*. at 348–50. After acknowledging the obvious difference between mental illness and drug use, the court observed that "there is an intuitive similarity: Those who are briefly mentally infirm as a result of intoxication are similar to those permanently mentally infirm because of illness or disability." *Id*. at 349 (quotation omitted). On appeal, the government asks this court to infer that Gil's drug use rendered him continually impaired or mentally ill because he used marihuana daily to self-medicate and stated in a letter to the district court prior to sentencing that he had a mind "like the mind of any addict." We leave it to the district court to determine on remand whether that evidence satisfies a finding of constitutionality under *Daniels*.

Lastly, the *Daniels* court examined historical laws that disarmed persons deemed dangerous to public peace or safety and found that those laws did not justify the application of § 922(g)(3) to repeat marihuana users. *Id*. at 350–55. Looking to "particular regulatory traditions instead of a general notion of 'dangerousness,'" the court found that the analogous

historical laws were directed to the disarmament of politically disaffected citizens and religious dissenters, not just any group that the legislature might tag as dangerous, such as ordinary drunkards or, by extension, marihuana users. *Id.* at 354. The court also noted that § 922(g)(3) is not limited to persons with a history of violent behavior and, in any event, not all drug users or addicts are violent. *Id.* Thus, the *Daniels* court held that § 922(g)(3) was unconstitutional as applied to the defendant there because the government did not show how his marihuana use predisposed him to armed conflict or that he had a history of drug-related violence. *Id.*

Here, the district court erred in invoking historical laws disarming dangerous groups to uphold the facial constitutionality of § 922(g)(3). In support of its holding, the district court relied on several district court cases, but it did not scrutinize the analysis done by those courts. *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at *7. One of those cases was the district court's decision in *Daniels*—a decision that was subsequently overturned by our court. *Id.* (citing *United States v. Daniels*, 610 F. Supp. 3d 892, 895–97 (S.D. Miss. 2022), *rev'd*, 77 F.4th at 340). Two of the others are factually distinguishable because there was evidence that the defendants in those cases were intoxicated at the time of arrest. *See United States v. Sanchez*, 646 F. Supp. 3d 825, 829 (W.D. Tex. 2022) (defendant tested positive for controlled substances at the time he was found with the firearm), *appeal docketed*, No. 23-50293 (5th Cir. Apr. 27, 2023); *United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605, at *1 (N.D. Ill. Sept. 28, 2022) (defendant admitted he had used drugs within hours of his arrest). The remaining two cases relied on the historical analogues of intoxication and mental illness disarmament. *See United States v. Posey*, 655 F. Supp. 3d 762 (N.D. Ind. 2023); *Fried v. Garland*, 640 F. Supp. 3d 1252 (N.D. Fla. 2022). The government asks this court to assume that Gil was part of a dangerous group because he carried a firearm while dealing marihuana and drug dealing is dangerous. However,

Case 3:23-cv-05773-DGE Document 64-2 Filed 06/12/24 Page 10 of 24
Case: 23-50525 Document: 70-1 Page: 10 Date Filed: 06/06/2024

No. 23-50525

the government did not charge Gil with dealing marihuana or carrying a gun while doing so. It charged him with being an unlawful drug user in possession of a firearm. On remand, the district court must determine whether Gil, as a regular marihuana user or addict, was part of a dangerous group analogous to political and religious dissidents who could be disarmed at the time the Second Amendment was ratified.

The judgment of conviction is therefore VACATED and this matter is REMANDED for reconsideration of Gil's as-applied challenge to the constitutionality of § 922(g)(3) in light of *Daniels*.

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 06, 2024

Mr. Philip Devlin
Western District of Texas, El Paso
United States District Court
525 Magoffin Avenue
Room 108
El Paso, TX 79901-0000

No. 23-50525     USA v. Gil
                   USDC No. 3:22-CR-773-1

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Lisa E. Ferrara, Deputy Clerk
504-310-7675

cc:
    Mr. Matthew Rex DeKoatz
    Mr. Joseph H. Gay Jr.
    Mr. Zachary Carl Richter