No. 22-CR-0773-DB

IN THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

UNITED STATES OF AMERICA,

                                              Plaintiff-Appellee,

v.

ADRIAN GIL, II

                                              Defendant-Appellant.

_____

_____

SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLANT

_____

                                       Matthew Rex DeKoatz
                                       Attorney for Defendant-Appellant
                                       2000 Murchison, Suite C.
                                       El Paso, Texas 79902
                                       Tel.: (915) 235-5330

                                       mateodekoatz@yahoo.com

STATEMENT OF THE CASE

1. Nature of the Case.

Defendant-Appellant Adrian Gil was charged in a single-count indictment with

> COUNT ONE
> (18 U.S.C. § 922(g)(3) & 18 U.S.C. § 924(a)(2))
> Defendant, ADRIAN GIL II, knowing that he was an unlawful user of a controlled substance as defined in Title 21 U.S.C. Sec.802 did knowingly possess a firearm, that is, a Glock 22, .40 caliber handgun, bearing serial number KZB971, said firearm having been shipped and transported in interstate commerce; in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2).

Ultimately, Defendant pleaded guilty, and his plea of guilty was not made pursuant to a plea agreement. ROA. 169.

2. Course of Proceedings and Disposition in the Court Below

The indictment in this case was filed in the Western District of Texas, El Paso Division, on June 1, 2022. ROA. 14. The indictment charged Defendant with the federal crime of drug user in possession of firearm in violation of 18 U.S.C. § 922(g)(3) & 18 U.S.C. § 924(a)(2)).

The Defendant-Appellant pleaded guilty without a plea agreement on November 22, 2022, before the Hon. David Briones. ROA. 169. Defendant was sentenced by the Hon. David Briones on July 19, 2023. According to the report by the Probation Department:

> Count 1: Drug User in Possession of Firearm
>
> 22. Base Offense Level: The guideline for a violation of 18 U.S.C. § 922(g)(3) is USSG §2K2.1. Pursuant to USSG §2K2.1(a)(3), if (A), the offense involved a (ii) firearm that is described in 26 U.S.C §5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense, the base offense level is 22.   In this case, Gil possessed a Glock model 22, .40 caliber bearing serial number KZB971, mounted with a "Glock Switch" that met the definition of a machine gun as defined in 26 U.S.C §5845(a); and he possessed the firearm subsequent to his felony conviction for Possession of a Controlled Substance in Penalty Group 1 less than 1 Gram: Cocaine in Dkt. No. 20190D00899 (paragraph 37).
>
> 23. Specific Offense Characteristics: Pursuant to USSG §2K2.1(b)(1), if the offense involved three or more firearms, increase as follows: (A) 3-7 firearms, increase 2 levels. In this case, the offense involved six (6) firearms. As such, two-levels are added. +2.
>
> 24. Specific Offense Characteristics: Pursuant to USSG §2K2.1(b)(6), if the defendant-- (B) used or possessed any firearm or ammunition in connection with another felony offense, increase by 4 levels.   In this case, Gil possessed a firearm in connection with the felony offense of Manufacture Delivery of a Controlled

> Substance in Penalty Group 2 Over 4 Grams Under 400 Grams (paragraph 44). As such, four-levels are added. +4
>
> 25. Victim Related Adjustment: None. 0
> 26. Adjustment for Role in the Offense: None. 0
> 27. Adjustment for Obstruction of Justice: None. 0
> 28. Adjusted Offense Level (Subtotal): 28
> 29. Chapter Four Enhancement: None. 0
> 30. Acceptance of Responsibility: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). -2
>
> 31. Acceptance of Responsibility: The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). -1
> 32. Total Offense Level: 25

ROA 196-197.

On July 19, 2023, at the formal sentencing hearing, the trial court placed Defendant in a criminal history category of III. Based upon these calculations, and based upon the applicable guideline range, the trial court placed Defendant at level 25, CAT III, with a range of punishment of 70-87 months of custody in the Bureau of Prisons. Defense Counsel argued for variance, and the trial court granted a variance. The trial court sentenced Defendant to 35 months of custody, to pay a special assessment of one hundred dollars and to three years of reporting

supervised release. ROA 183-185.  Based upon recent case law, discussed and based upon Defendant's motion to dismiss indictment and withdraw his plea of guilty, denied by the trial court, it was understood that Defendant would appeal his judgment of conviction under the Second Amendment of the United States Constitution.   ROA 178.

3. Statement of Facts

The Government recited the factual basis of the plea, quoted below.

ARGUMENT

Defendant-Appellant sought to dismiss the indictment and withdraw his guilty plea based upon recent case law.  The trial court took a conservative approach and denied Gil's motion to withdraw his guilty plea.  Because there is a serious question and movement to declare the statute of conviction, as applied in the instant case, as violative of the Second Amendment, right to bear arms, Gil moves that this Honorable Court reverse the decision of the trial court and vacate the conviction and dismiss the indictment with prejudice.

Standard of Review.

Once a district court accepts a guilty plea, the defendant has no absolute right to withdraw it. *See* Fed. R. Crim. P. 11(d); *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). A district court may grant a motion to withdraw a guilty plea upon a showing of "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The burden of establishing a fair and just reason for withdrawing a guilty plea rests with the defendant. *Powell*, 354 F.3d at 370.

Argument and Authority.

Defendant-Appellant Gil argues that his conviction in the case at bar is constitutionally infirm based upon the Fifth Circuit's recent landmark cases of United States v. Rahimi, No. 21-11001, Fifth Circuit, February 2, 2023; and, United States v. Daniels, No. 22-60596, Fifth Circuit, August 9, 2023. On appeal, Gil challenged the district court's denial of his motion to withdraw his guilty plea and dismiss the indictment, arguing that § 922(g)(3) violates the Second Amendment as applied to him given *Bruen*, *Rahimi*, and *Daniels*.

Gil preserved his right to challenge the constitutionality of the statute of conviction on direct appeal by raising the challenge in the district court in his motion to dismiss the indictment. *See Class v. United States*, 583 U.S. 174,178–

79 (2018); *Daniels*, 77 F.4th at 341. This court reviews constitutional questions—including the constitutionality of a statute—de novo. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003). Review of the denial of a motion to dismiss the indictment is likewise de novo. *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017).

On the other hand, this court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009). And a district court's factual findings are reviewed for clear error. *United States v. Scully*, 951 F.3d 656, 668 (5th Cir. 2020). Subject to some limitations, "[t]he Second Amendment protects the right of individuals to keep and bear firearms for their self-defense." *Daniels*, 77 F.4th at 341 (internal quotation marks and citations omitted).

With *Bruen*, the Supreme Court articulated a new test for assessing the constitutionality of a gun-restriction statute under the Second Amendment. *Id.* (citing *Bruen*, 597 U.S. at 22–27). Because "the Second Amendment codified a *pre-existing* right with pre-existing limits," courts must look to "historical gun regulations [that] evince the kind of limits that were well-understood at the time

the Second Amendment was ratified." *Id*. (emphasis in original) (citing *Bruen*, 597 U.S. at 20). A modern-day gun regulation that is inconsistent with the historical limits on firearms is inconsistent with the Second Amendment. *Id*. To that end, the *Bruen* court prescribed a two-step approach for analyzing the constitutionality of modern firearms laws. *Id*.

First, a court must determine whether the Second Amendment's plain text covers the individual's conduct, and if it does, the Constitution presumptively protects that conduct. *Id*. (citing *Bruen*, 597 U.S. at 24). Second, a court must consider "whether a given gun restriction is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id*. (quoting *Bruen*, 597 U.S. at 24). The government bears the burden of showing a tradition supporting the challenged law, *i.e.*, "that the law does not tread on the historical scope of the right." *Id*. At this second step, courts are to take one of two pathways: (1) "If the modern regulation addresses 'a general societal problem that has persisted since the 18th century,' then 'the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment'"; or (2) "if a modern law addresses 'unprecedented societal concerns or dramatic technological changes,' it calls for a 'more nuanced

approach,'" where courts "reason by analogy to determine whether older regulations are 'relevantly similar' to the modern law." *Id*. at 342 (quoting *Bruen*, 597 U.S. at 26–29).

Employing *Bruen*'s analytical framework, the court in *Daniels* held that § 922(g)(3) was unconstitutional as applied to the defendant. *Id*. At 339–55. First, the court found that the defendant—an admitted regular marihuana user—was covered by the plain text of the Second Amendment and had a presumptive right to bear arms. *Daniels*, 77 F.4th at 342. At *Bruen*'s second step, the *Daniels* court found that unlawful drug use and addiction represent an unprecedented societal concern that did not exist in the 18th century, thus requiring the nuanced approach, analyzing by analogy whether older regulations are relevantly similar to § 922(g)(3). *Daniels*, 77 F.4th at 343–44. The court examined three potential historical analogues: (1) statutes disarming persons intoxicated by alcohol, (2) statutes disarming the mentally ill, and (3) statutes disarming those adjudged dangerous or disloyal. *Id*. at 344–55.

**After reviewing several 18th and 19th century statutes that disarmed intoxicated persons, the *Daniels* court held that those laws do not support the constitutionality of § 922(g)(3) *because they did not bar gun possession by regular drinkers. Id. at 345–47.*** The analogous "statutes support . . . banning the *carry* of firearms *while under the influence*," but "[s]ection 922(g)(3) bans all possession [by unlawful drug users or those addicted to a controlled substance], and it does so for an undefined set of 'users,' even if they are not under the influence." *Id*. at 347 (emphasis in original). The court pointed out that "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user' under § 922(g)(3)," because the "temporal nexus" of the latter is vague in that "it does not specify how recently an individual must 'use' drugs to qualify for the prohibition." *Id*. at 347–48. **Notably, the government did not present any evidence that the defendant was intoxicated at the time he was found with the gun. *Id*. at 348.**

**The district court in this case determined that the historical analogues disarming the intoxicated do not support the facial constitutionality of § 922(g)(3). *Gil*, EP-22-CR-773-DB, 2023 WL 4356067, at \*6. It did so, though, without the benefit of the newest decision in Daniels.**

**The government asks this court to infer that Gil was intoxicated** when he possessed the guns and at the time of arrest because he admitted to using marihuana daily and he failed a sobriety test when stopped for speeding on two occasions. **We decline the invitation to make such an inference at this stage**, and also leave to the district court the question of whether, if that inference is appropriate, it would satisfy a finding of constitutionality under *Daniels*.

**No inference should be made.**

The court in *Daniels* next examined the historical practice of institutionalizing—and consequently disarming—the mentally ill as historically analogous to disarming illegal drug users or those addicted to a controlled substance. *Id*. at 348–50. After acknowledging the obvious difference between mental illness and drug use, the court observed that "there is an intuitive similarity: Those who are briefly mentally infirm as a result of intoxication are similar to those permanently mentally infirm because of illness or disability." *Id*. at 349 (quotation omitted). On appeal, the government asked this court to infer that Gil's drug use rendered him continually impaired or mentally ill because he used marihuana daily to self

medicate and stated in a letter to the district court prior to sentencing that he had a mind "like the mind of any addict." **We leave it to the district court to determine on remand whether that evidence satisfies a finding of constitutionality under *Daniels*.**

**Defendant herein argues that there is no such proof of impairment or mental illness.**

**Lastly, the *Daniels* court examined historical laws that disarmed persons deemed dangerous to public peace or safety and found that those laws did not justify the application of § 922(g)(3) to repeat marihuana users.** *Id*. at 350–55. Looking to "particular regulatory traditions instead of a general notion of 'dangerousness,'" the court found that the analogous historical laws were directed to the disarmament of politically disaffected citizens and religious dissenters, not just any group that the legislature might tag as dangerous, such as ordinary drunkards or, by extension, marihuana users. *Id*. at 354. The court also noted that § 922(g)(3) is not limited to persons with a history of violent behavior and, in any event, not all drug users or addicts are violent. *Id*. **Thus, the *Daniels* court held that § 922(g)(3) was unconstitutional as applied to the defendant**

there because the government did not show how his marihuana use predisposed him to armed conflict or that he had a history of drug-related violence. *Id*.

**Defendant at bar argues that there is no evidence of such a predisposition.**

**Here, the district court erred in invoking historical laws disarming dangerous groups to uphold the facial constitutionality of § 922(g)(3).** The government asks this court to assume that Gil was part of a dangerous group because he carried a firearm while dealing marihuana and drug dealing is dangerous. However, the government did not charge Gil with dealing marihuana or carrying a gun while doing so. It charged him with being an unlawful drug user in possession of a firearm. **On remand, the district court must determine whether Gil, as a regular marihuana user or addict, was part of a dangerous group analogous to political and religious dissidents who could be disarmed at the time the Second Amendment was ratified.**

**Defendant argues that there is no evidence that he was part of a dangerous group.**

The Government's indictment charged Defendant under the following statutes:

> 18 U.S. Code § 922(g)(3)
> (g) It shall be unlawful for any person—
> (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

> 18 U.S. Code § 924 – Penalties
>
> (a) (2) Whoever knowingly violates subsection (a)(6), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.
>
> [(8) Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both.]

Defendant Gil further cites:

> Second Amendment
> A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

--On November 10, 2022, Defendant pleaded guilty.

--On February 2, 2023, the Fifth Circuit issued Rahimi.

--On February 26, 2023, Defendant filed his motion to dismiss and withdraw his plea of guilty.

--On July 5, 2023, the trial court denied Gil's motion to dismiss and withdraw guilty plea.

--On July 19, 2023, the trial court sentenced Defendant.

--On August 9, 2023, the Fifth Circuit issued Daniels.

--On August 10, 2023, Defendant filed his motion for new trial.

--On September 15, 2023, the trial court denied Defendant's motion for new trial, as not timely filed.

--On September 30, 2023, Defendant filed his appeal.

--On May 15, 2024, the Fifth Circuit issued its opinion.

Defendant's motion to dismiss and withdraw his guilty plea states:

> The Indictment in this case charging Mr. Gil with Drug User in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(3), is an unconstitutional infringement of Mr. Gil's Second Amendment right to possess a firearm as elucidated by *New York State Rifle & Pistol Ass'n, Inc.v. Bruen*, 142 S. Ct. 2111 (2022). *See United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023).

ROA 58-67

At the plea hearing, the Government's summary does not show Gil was intoxicated at the time of his arrest.

> THE COURT: Mr. Serwatka, what are you prepared to prove here?
>
> MR. SERWATKA: Your Honor, if this case were to proceed to trial the United States would be prepared to prove that on July 15 of 2021, in a custodial interview of the defendant, which was recorded, the interview -- the defendant was given his *Miranda* rights by an Agent Schuler of the Alcohol, Tobacco, Firearms and Explosives. He waived his rights in writing and agreed to talk with Agent Schuler. The defendant said all of the guns belonged to him, and those guns were found at a residence that the defendant was at. They belonged to him, and he purchased most of the firearms from private sales. He said that he was on probation for DUI and was also running a concurrent probation for possession of marijuana.
>
> He said the Keltec rifle belonged to him, and he placed it in Vanessa Ramirez's room. He said he purchased the firearm from El Paso Gun Exchange. He said he purchased the Draco 7.26 pistol and black revolver from an old man in a garage sale several years ago. Defendant purchased both

—16—

firearms for a total of $1100. He said sometime in 2018.
Defendant said he purchased the FN, .45 caliber
handgun from a private sale sometime in 2019. He said he paid
$1,000 for that firearm. And, that he purchased the Glock,
which was the handgun in this case, for $700.   Agent Schuler asked what
happened the previous evening that he got the police called. Defendant
said that he was inside of his residence and heard some shouting outside,
went outside to see what was going on. At this time, Agent Schuler
warned the defendant that lying to a federal agent is a crime
and to make sure that he was honest.

Agent Schuler asked Gil how long he had been using
marijuana. Defendant said that he had been using marijuana
since he was 14 years old and that after high school he began
using marijuana daily.
Agent Schuler asked the Defendant if he knew it was a
federal offense to be a drug user in possession of a firearm.
Defendant said, "Trap. Trap. You got me."
Defendant said that he knew it was illegal to have
marijuana, a medical card from New Mexico, and have a firearm.
Defendant told Agent Schuler that marijuana helped him
eat more and said, "I just like good weed."
Agent Schuler asked the defendant if he was ever
concerned about having drugs and getting ripped off. The
defendant said that he was concerned about people breaking into
his house.

At this time the defendant said he didn't want to
answer any more questions about the marijuana, and he said
he'll take the guns, indicating that all the firearms were his.
With regards to the Glock and all the other firearms,
nexus checks were made on them, and none of them were
manufactured in Texas, so they all moved in interstate
commerce.

THE COURT: Ms. Butterworth, any corrections to the
factual basis on Mr. Gil?

> MS. BUTTERWORTH: No, Your Honor.
> THE COURT: Mr. Gil, having heard Mr. Serwatka recite the facts of your case, is everything correct as he stated?
> THE DEFENDANT: Yes, Your Honor.

ROA 169-172.

Your Defendant-Appellant Adrian Gil suggests that he made and does make a showing of "a fair and just reason for requesting the withdrawal" of his plea of guilty and motion to dismiss the indictment in the instant case. Fed. R. Crim. P. 11(d)(2)(B).

## CONCLUSION

For the foregoing reasons, the Defendant-Appellant, Adrian Gil moves that this Honorable Court dismiss the instant prosecution with prejudice.

Appellant Gil thanks the Honorable District Court and wishes the Honorable Court well.

Respectfully submitted,

/S/Matthew "Mateo" DeKoatz
Matthew Rex DeKoatz
Attorney for Defendant-Appellant
State bar No. 05722300
521 Texas Ave.
El Paso, Texas 79901
(915) 235-5330
mateodekoatz@yahoo.com

## CERTIFICATE OF SERVICE

I, Matthew Rex DeKoatz certify that on July 26, 2024, Stan Serwatka, Assistant United States Attorney, was served with a copy of this Supplemental Reply Brief through the CM/ECF system.

/S/Matthew Rex DeKoatz
Matthew Rex DeKoatz
Attorney for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to the Rules, counsel certifies that this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the portions exempted by 5th Cir. R. 32.2.7(b)(3), this brief contains 3644 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes, if any, produced by Microsoft Word software; no footnotes.

3. Upon request, counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/S/Matthew Rex DeKoatz
Matthew Rex DeKoatz
Attorney for Defendant-Appellant